UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STARLA BRAHAM,<br><br>                    Plaintiff,<br><br>          v.<br><br>AUTOMATED ACCOUNTS, INC., a<br>Washington Corporation, and<br>MICHELLE DOE AND JOHN DOE,<br>husband and wife and the marital<br>community comprised thereof,<br><br>                    Defendants. | NO. CV-10-0385-EFS<br><br>**ORDER GRANTING DEFENDANTS'<br>SUMMARY JUDGMENT MOTION,<br>DENYING PLAINTIFF'S MOTION<br>FOR SUMMARY JUDGMENT, AND<br>CLOSING FILE** |

A hearing occurred in the above-captioned matter on February 21, 2012, in Richland. Plaintiff Starla Braham was represented by Kirk Miller. Thomas Smith appeared on behalf of Defendants Michelle Bull and Automated Accounts, Inc., who was also represented by counsel Tim Durkop.[1] Before the Court were the parties' summary-judgment motions: Ms. Braham's Motion for Summary Judgment on Defendants' Liability, ECF No. 37, and Defendants' Motion for Summary Judgment, ECF No. 24. After reviewing the record, considering the legal authority, and hearing from counsel, the Court is fully informed. For the reasons given below, the Court grants summary judgment in Defendants' favor.

---

[1] Michelle Bull was identified as Michelle Doe in the Complaint, ECF No. 1.

ORDER ~ 1

**A.    Facts**[2]

In 2008, Ms. Braham visited the Deaconess Hospital emergency room and received treatment for an injury.  As a result of this treatment, Ms. Braham incurred a debt, which remained unpaid.  Deaconess referred the unpaid debt to Automated Accounts.

Ms. Bull works for Automated Accounts and her duties include calling debtors/consumers to verify account information and handling credit reporting calls.  To recover Ms. Braham's Deaconess debt, Ms. Bull spoke with Ms. Braham multiple times in 2008 and 2009.  Ms. Bull and Ms. Braham agreed to allow Ms. Braham to pay $50 per month toward the debt.  In October or November 2008, Ms. Braham began making such payments, and for several months she made payments toward the debt.  However, in August or September 2009, Ms. Braham began making the payments late.

In October 2009, Ms. Braham deposited money into her bank account through the ATM.  Not all of the deposited funds were available when Automated Accounts attempted to electronically withdraw the previously-agreed upon payment.  On November 2, 2009, Ms. Bull spoke to Mr. Braham

---

[2] This factual statement is based primarily on the parties' Joint Statement of Agreed Facts for Summary Judgment.  ECF No. 51.  In this factual statement, agreed facts are not supported by a citation to the record, while disputed facts are supported by a citation.  The Court has not weighed the evidence or assessed credibility and has not accepted assertions made by a party that were flatly contradicted by the record.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

ORDER ~ 2

on the phone.  The parties dispute the exact contents of this unrecorded telephone conversation, which was not overheard by anyone else.  But the parties agree that Ms. Bull advised Ms. Braham that the agreed-upon electronic withdrawal had been denied and, as a result, Automated Accounts would start the "legal process" to collect Ms. Braham's debts. They also agree that Ms. Bull's tone was polite and she did not yell or use unpleasantries.

> Ms. Braham describes her conversation with Ms. Bull as follows:

>> I [Ms. Bull] talked with my supervisor already and we are going to start the process of garnishing your wages.  And I said, what does that mean?  She said the legal process.  And I said, what does that mean?  She said garnishing your wages.  That is what she said.  Nothing else was said to me.

ECF No. 28-1 at 34.  Ms. Braham interpreted this to mean that Automated Account would immediately start to garnish her wages.  *Id*.

In comparison, Ms. Bull states that during this telephone conversation she told Ms. Braham that due to the late payment she would refer the matter to Automated Accounts' legal department.  ECF No. 29 at 3.  Ms. Braham then asked whether this legal process included garnishment, and Ms. Bull responded that garnishment is part of the legal process.  *Id*. at 3-4.

Later that day, Ms. Braham called Automated Accounts and asked to speak to Ms. Bull's supervisor, Mario Ruiz.  ECF No. 29 at 4.  Mr. Ruiz agreed to process another payment for Ms. Braham.  ECF No. 30 at 3. During this conversation, Mr. Ruiz could hear Ms. Braham's husband, Larry Braham, discuss loudly in the background that wages could not be garnished without first obtaining a judgment.

ORDER ~ 3

1    Soon after their respective phone calls with Ms. Braham, Ms. Bull

2    and Mr. Ruiz documented their conversations on Automated Accounts'

3    computer program.  This computer program does not allow the inputted

4    comments to be altered or amended after the notes are made.  The notes

5    made by Ms. Bull stated, in pertinent part: "IN THE END I ADVSD STARTG

6    LEGAL ON ACCT. SHE ASKED IF THAT MEANS GARN? I ADVSD GARN IS PART PROCESS

7    LEGAL. SHE UNDERSTDS."  ECF No. 31-1 at 165.  On the same date as these

8    telephone conversations, Ms. Bull requested assignment of Ms. Braham's

9    debt from Deaconess.

10    The November 2, 2009 conversation with Ms. Bull upset Ms. Braham,

11   causing her to shake, cry, and have a panic attack later that day.  ECF

12   No. 42 at 4.  Ms. Braham continued to fear that her wages would be

13   garnished and caused her to feel greater anxiety than she typically felt

14   regarding her family's financial situation.  This fear continued until

15   January 2011 when she closed the subject bank account.  *Id.* at 5.

16    In January 2010, Ms. Braham received a letter from Automated

17   Accounts informing her that her debt remained unpaid.  The January 2010

18   letter did not mention garnishment.  Ms. Braham made no further payments

19   toward this debt, and in January 2011, she closed the bank account that

20   Automated Account had previously withdrew money from for payments toward

21   the debt.

22    On October 29, 2010, Ms. Braham filed this lawsuit, alleging

23   violations of the Fair Debt Collections Practices Act (FDCPA), 15 U.S.C.

24   § 1692 *et al*.  Following discovery, the instant cross-motions for summary

25   judgment were filed.  ECF Nos. 24 & 37.

26   ///

ORDER ~ 4

**B.    Standard**

Summary judgment is appropriate if the record establishes "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party opposing summary judgment must point to specific facts establishing a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).  If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion.  *Celotex Corp.*, 477 U.S. at 322.

**C.    Authority and Analysis**

Ms. Braham contends Defendants violated §§ 1692e(4), 1692e(5), and 1692f of the FDCPA during the November 2, 2009 telephone conversation between Ms. Braham and Ms. Bull because Ms. Bull advised that Ms. Braham's wages would be garnished even though no judgment had been entered.  Defendants submit that, even when viewing the facts in Ms. Braham's favor, Ms. Bull's conduct did not violate the FDCPA.

To prove a FDCPA violation, Ms. Braham must establish 1) she was the object of collection activity arising from a consumer debt, 2) Defendants are debt collectors, and 3) Defendants engaged in conduct prohibited by the FDCPA. *See Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232-35 (3d Cir. 2005) (analyzing FDCPA claim).  The first two elements are undisputed:  Defendants are debt collectors who seek to collect a consumer debt from Ms. Braham.  The third element, i.e., whether Defendants violated the FDCPA, is disputed.

When analyzing whether Defendants violated the FDCPA, the Court applies the "least sophisticated debtor" standard. *See Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011). This objective standard is "'designed to protect consumers of below average sophistication or intelligence,' or those who are 'uninformed or naive,' particularly when those individuals are targeted by debt collectors." *Id*. at 1062 (quoting *Duffy v. Landberg*, 215 F.3d 871, 874-75 (8th Cir. 2000)); *see also Terran v. Kaplan*, 109 F.3d 1428, 1431-32 (9th Cir. 1997). Yet, this standard requires the debtor to utilize some reasonableness and be willing to read and understand the information provided by the debt collector. *Gonzales*, 660 F.3d at 1062. Therefore, a debt collector is not liable for "bizarre," "idiosyncratic," or "peculiar" misinterpretations. *Id*. It is the court's task to resolve the legal question of whether the debt collector's language when viewed in its entirety violates the FDCPA. *Terran*, 109 F.3d at 1432; *Pipiles v. Credit Bur. of Lockport*, 886 F.2d 22, 25 (2d Cir. 1989) (requiring the entire language to be considered when analyzing claims of deception under the FDCPA).

Here, the Court focuses on whether Ms. Bull's reference to the garnishment process and legal process violate 15 U.S.C. §§ 1692e(4) and (5) and 1692f. Section 1692e states, in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . . .
>
> (4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any

ORDER ~ 6

person or the seizure, garnishment, attachment, or sale
of any property or wages of any person unless such action
is lawful and the debt collector or creditor intends to
take such action.

(5)   The threat to take any action that cannot legally be taken
or that is not intended to be taken.

15 U.S.C. § 1692e.  And § 1692f prohibits a debt collector from using any

false representation, or unfair, unconscionable, or deceptive means to

collect or attempt to collect a debt.  *Id.* § 1692f.

When considering the entirety of the November 2, 2009 conversations,

the Court concludes that, even when viewing the evidence in Ms. Braham's

favor, Defendants' conduct did not violate §§ 1692e(4), 1692e(5), or

1692f.   Ms. Bull advised Ms. Braham that due to her late payment

Automated Accounts would start the *process* of garnishment and the legal

*process*.  No threat of immediate garnishment or specific legal action was

made; rather, Ms. Bull generally cautioned that the process of beginning

such action would occur.   Because Ms. Braham's payment was late,

Automated Accounts had the legal authority to initiate such processes.

And Automated Accounts intended to initiate the legal action as is

evidenced by Ms. Bull's requested assignment of Ms. Braham's debt from

Deaconess.   Therefore, Defendants did not violate § 1692e(4) and (5).

The Court likewise finds that Ms. Bull did not use any false

representation or unfair, unconscionable, or deceptive means to collect

the debt; thus, Defendants did not violate § 1692f.

Ms. Braham argues that Ms. Bull did not fully explain what the legal

process, or process of garnishment, meant and that it was not Ms.

Braham's "obligation to seek explanation of confusing or misleading [debt

collection] language . . . ."  *Gonzales*, 660 F.3d at 1062.  Yet, there

was no specific legal action being taken that needed to be further explained. The Court acknowledges that discussions relating to garnishment could frighten and stress a debtor and that "a literally true statement can still be misleading." *Gonzales*, 660 F.3d at 1062; *see also Jeter v. Credit Bur., Inc.*, 760 F.2d 1168, 1178-79 (11th Cir. 1985) (recognizing that a lawsuit might cause a debtor "embarrassment, inconvenience, and further expense"). However, Ms. Bull discussed garnishment as part of the legal process to be used once Ms. Braham's debt payment was late. Ms. Bull did not indicate that Automated Accounts would begin garnishing Ms. Braham's wages immediately; rather, Ms. Bull cautioned the legal process to do so would be initiated. Prohibiting a debt collector from calmly advising a debtor who is late in her payments that the debt collector will begin the legal process of collecting on the debt, including initiating the legal process to garnish wages, does not serve the FDCPA's purpose of eliminating "abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Furthermore, Ms. Bull's comments, and the least sophisticated debtor's willing understanding of such, must be considered in light of Ms. Braham's subsequent conversation with Mr. Ruiz. Ms. Braham requested that Automated Accounts initiate another draw on her bank account. Mr. Ruiz agreed to do so, and did attempt another draw. This second attempted draw was unsuccessful. Thereafter, Defendants appropriately pursued the legal processes involved in collecting on the debt. Because no FDCPA violation occurred, Defendants are granted summary judgment.

//

/

ORDER ~ 8

**D.    Conclusion**

For the above-given reasons, **IT IS HEREBY ORDERED**:

1.    Ms. Braham's Motion for Summary Judgment on Defendants' Liability, **ECF No. 37**, is **DENIED.**

2.    Defendants' Motion for Summary Judgment, **ECF No. 24**, is **GRANTED.**

3.    **Judgment** is to be entered in Defendants' favor **with prejudice.**

4.    All pending motions and hearings are **STRICKEN.**

5.    This file is **CLOSED.**

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and provide copies to counsel.

DATED this ___21st___ day of February 2012.


_____S/ Edward F. Shea_____
EDWARD F. SHEA
United States District Judge

Q:\Civil\2010\0385.msj.lc1.wpd

ORDER ~ 9